UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

KEON ALLEN, a/k/a Mike Jones,
a/k/a Benny Jones, a/k/a Mark Sinc,
a/k/a Benny,

*Defendant-Appellant.*

No. 02-4094

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., District Judge.
(CR-01-10)

Argued: February 28, 2003

Decided: June 2, 2003

Before WILLIAMS, GREGORY, and SHEDD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Christopher P. Riley, BAILEY, RILEY, BUCH & HAR-MAN, L.C., Wheeling, West Virginia, for Appellant. Samuel Gerald Nazzaro, Jr., Assistant United States Attorney, Wheeling, West Virginia, for Appellee. **ON BRIEF:** Thomas E. Johnston, United States Attorney, John C. Parr, Assistant United States Attorney, Wheeling, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Keon Allen pleaded guilty to four counts of a 42-count indictment alleging, inter alia, that he participated in a conspiracy to possess with intent to distribute and to distribute more than 50 grams of cocaine base in violation of 21 U.S.C.A. §§ 841(b)(1)(A)(iii) and 846 (West 1999 & Supp. 2003). Allen appeals from the district court's imposition of a 170-month sentence on the cocaine base conspiracy count, arguing that the district court erred in concluding that his guilty plea to that count established that at least 50 grams of cocaine base were attributable to him for sentencing purposes. Finding no reversible error, we affirm.

I.

Allen was indicted on May 30, 2001, in the United States District Court for the Northern District of West Virginia, in a 14-defendant, 42-count indictment. On October 10, 2001, Allen pleaded guilty to four counts in the indictment, including Count I, which alleged a conspiracy to distribute more than 50 grams of cocaine base. Count I is the subject of this appeal.

At Allen's plea hearing, Special Agent Manchas of the Drug Enforcement Agency testified to provide a factual basis for the plea. Manchas stated that an investigation into suspected cocaine base distribution in Wheeling, West Virginia, led to the discovery of a conspiracy to distribute cocaine base involving Allen. During the course of the investigation, Manchas testified, several "controlled buys" were made from Allen in different locations. The total weight of the cocaine base purchased from Allen in these controlled buys was 0.8 grams. Manchas also described what investigators had learned about Allen's dealings in cocaine base from other witnesses, describing statements from witnesses and testimony before the grand jury indi-

cating that Allen regularly sold cocaine base at several locations in Wheeling over a period of at least four to five months.

The district court asked Allen at the plea hearing how he pleaded to each of the four counts in question. To the question concerning Count I, Allen responded "[g]uilty, sir." The district court then asked several follow-up questions concerning the allegations in Count I to ensure that Allen's plea was knowing and voluntary. In response to one of these questions, Allen's attorney suggested that Allen might wish to challenge the amount of drugs attributable to him, but was prepared to plead guilty to the allegations in the indictment. The district court stated that Allen's challenge would be dealt with at the time of sentencing.

Following Allen's guilty plea, the probation officer prepared a pre-sentence report (PSR). The PSR calculated the drug quantity attributable to Allen as follows: 0.8 grams of cocaine base from the controlled buys, 2 grams of cocaine base testified to by Anton Drake before the grand jury, 1.5 grams of cocaine base testified to by Randy Riddle before the grand jury, and 52.5 grams of cocaine base testified to by Mary Ann Gentry before the grand jury, for a total of 56.8 grams of cocaine base.

Allen filed objections to the PSR, including challenges to the PSR's conclusion that his guilty plea to Count I of the conspiracy established a minimum drug quantity attributable to him for purposes of determining relevant conduct under the Sentencing Guidelines, and to the PSR's use of grand jury testimony by Drake, Riddle, and Gentry to determine the drug amount attributable to him. The district court heard argument on Allen's objections, and Allen testified on his own behalf. Allen stated that he had distributed only between 5 and 20 grams of cocaine base, rather than the full amount attributed to him by the PSR. The district court overruled Allen's objections and imposed a sentence of 170 months imprisonment, based on distribution of more than 50 grams of cocaine base. Allen timely noted this appeal.

II.

Allen's sole argument on appeal is that the district court erred in sentencing him based on a drug quantity of more than 50 grams of

cocaine base. More precisely, Allen asserts that the district court erred in apparently permitting him, during the plea hearing, to reserve the right to challenge drug quantity for sentencing purposes, then reversing course at sentencing and concluding that his guilty plea to an indictment charging a specific drug quantity foreclosed his challenge to that quantity. In this regard, Allen relies heavily on our holding in *United States v. Gilliam*, 987 F.2d 1009 (4th Cir. 1993), in which we held that a defendant's plea of guilty to an indictment alleging a conspiracy to distribute 30 kilograms of cocaine did not establish that 30 kilograms were attributable to him for sentencing purposes. *Id.* at 1014 (noting that "while a plea of guilty to an indictment containing an allegation of the amount of drugs for which a defendant is responsible may, in the absence of a reservation by the defendant of his right to dispute the amount at sentencing, constitute an admission of that quantity for sentencing purposes," a guilty plea to a conspiracy indictment that contains an allegation of quantity as to the conspiracy as a whole, but does not contain an allegation of a specific amount attributable to the individual defendant, does not constitute such an admission).

As the district court questioned Allen to ensure that his guilty plea was knowing and voluntary, the following colloquy occurred:

> The court:    [H]ave you or your attorney, Mr. Dyer, found any defense to the charge made in any of these counts?
>
> Allen:    Not at this time, Your Honor.
>
> The court:    What defense do you think you might have at any time in this case?
>
> Counsel:    Your Honor, the defendant is probably speaking specifically to some of the allegations that have been made during some of the debriefings about the quantities of drugs he had been involved with and those sorts of things, but with respect to the specific counts and allegations within the indictment, he understands he pleads guilty.

| The court: | Do you understand that, Mr. Allen? You are disputing the amount of drugs that are involved, do you think? |
|---|---|
| Allen: | Yes, sir, Your Honor. |
| The court: | All right. And that's something we'll work out at the time of sentencing; do you understand that? |
| Allen: | Yes, sir, Your Honor. |

(J.A. at 89-90.) Later, at sentencing, the district court rejected Allen's challenge to drug quantity for two reasons. First, it stated that Allen's "plea of guilty specifically identifies the amount being more than 50 grams." (J.A. at 143.) Second, the district court stated that "there is nothing that I have heard that would cause me to indicate that Ms. Gentry's testimony was incredible or unbelievable or false or perjured and it supports" Allen's plea. (J.A. at 147.) Accordingly, the district court overruled Allen's challenge to the PSR's quantity determination, adopted the quantity determination in the PSR, and sentenced Allen accordingly. We customarily review a district court's drug quantity determination for purposes of sentencing for clear error. *United States v. Randall*, 171 F.3d 195, 210 (4th Cir. 1999). As we explain below, however, we believe that Allen's challenge to his sentence implicates questions of both law and fact; in this circumstance, questions of law are reviewed de novo, questions of fact are reviewed for clear error, and mixed questions of law and fact are reviewed under a standard that gives due deference to the district court. *United States v. Nale*, 101 F.3d 1000, 1003 (4th Cir. 1996).

As an initial matter, we dispose of the Government's contention that if we accept Allen's characterization of the plea colloquy, there was an error (whether or not cognizable at this stage in the case) in accepting his guilty plea. Allen argues that although he admitted at the plea colloquy the drug quantity attributable to the conspiracy as a whole, he reserved the right to argue at sentencing that he distributed 50 grams or less of cocaine base; the Government contends that in order to plead guilty to Count I of the indictment, Allen had to admit personal responsibility for more than 50 grams of cocaine base,

because that quantity was alleged in the indictment, and after *Apprendi v. New Jersey*, 530 U.S. 466 (2000), drug quantity must be treated as an element of the offense with which Allen was charged.

Under *Apprendi*, and the cases applying *Apprendi*'s principles to drug prosecutions under 21 U.S.C.A. § 841, drug quantity must be treated as an element of the offense — that is, alleged in the indictment and proved to the jury beyond a reasonable doubt — to subject a defendant to a sentence longer than the maximum sentence provided in the statute for an indeterminate quantity of the drug in question. *See, e.g.*, *United States v. Promise*, 255 F.3d 150, 156-57 (4th Cir. 2001) (en banc) ("*Apprendi* dictates that in order to authorize the imposition of a sentence exceeding the maximum allowable without a jury finding of a specific threshold drug quantity, the specific threshold quantity must be treated as an element of an aggravated drug trafficking offense, i.e., charged in the indictment and proved to the jury beyond a reasonable doubt." (footnote omitted)). In light of this principle, we have noted that where an indictment charging a § 841 offense does not specify drug quantity, it is error for a court to impose a sentence, upon the defendant's guilty plea, in excess of the statutory maximum permissible for an indeterminate quantity of the drug in question. *United States v. Pauley*, 289 F.3d 254, 261 (4th Cir. 2002) (noting, where indictment did not allege threshold drug quantity and defendant pleaded guilty without admitting any quantity, that sentence exceeding statutory maximum for an indeterminate amount constituted plain error).

In accordance with *Apprendi*'s dictates, indictments charging § 841 offenses now regularly specify the quantity of drugs the defendant is alleged to have possessed with intent to distribute. Where a *conspiracy* to commit a § 841 offense is charged under § 846,[1] the indictment, as here, commonly specifies the drug quantity for which the whole conspiracy is allegedly responsible, often without specifying quantities for which individual members of the conspiracy are respon-

---

[1]Section 846 provides in full: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C.A. § 846 (West 1999).

sible. In such a case, a defendant's decision to plead guilty to the indictment raises the question of what quantity may be attributed to him.

Several circuits have held that a jury's finding, beyond a reasonable doubt, as to the quantity of drugs attributable to a conspiracy as a whole establishes the applicable statutory maximum sentence for individual defendants charged in a generally worded indictment with involvement in the conspiracy. Thus, a district court's drug quantity determination for a particular member of such a conspiracy at sentencing does not violate *Apprendi* so long as the defendant's sentence does not exceed the statutory maximum sentence allowable, given the type and quantity of drugs found by the jury to be involved in the conspiracy as a whole. In *Derman v. United States*, 298 F.3d 34 (1st Cir. 2002), for example, the First Circuit held that under the principles announced in *Apprendi*,

> in a drug conspiracy case, the jury should determine the existence *vel non* of the conspiracy as well as any facts about the conspiracy that will increase the possible penalty for the crime of conviction beyond the default statutory maximum; and the judge should determine, at sentencing, the particulars regarding the involvement of each participant in the conspiracy.

*Id.* at 42-43. Once the jury has determined the type and quantity of drugs involved in the conspiracy as a whole and has found the defendant guilty of participation in the conspiracy, the court held, "the judge lawfully may determine the drug quantity attributable to that defendant and sentence him accordingly (so long as the sentence falls within the statutory maximum made applicable by the jury's conspiracy-wide drug quantity determination)." *Id.* at 43; *see also United States v. Turner*, 319 F.3d 716, 722-23 (5th Cir. 2003) (adopting the rule announced in *Derman*); *United States v. Munoz*, 324 F.3d 987, 991 (8th Cir. 2003) (noting, where quantity attributable to conspiracy was alleged in indictment and submitted to the jury, that "[w]hen sentencing a defendant who has been found guilty by a jury of drug conspiracy in violation of 21 U.S.C. §§ 841 and 846, the sentencing judge must determine the kind and quantity of controlled substances for which [the] defendant should be held accountable").

Our conclusion in *Gilliam* — that a defendant's guilty plea to a conspiracy indictment alleging quantity but not ascribing any specified quantity to the individual defendant does not automatically render the defendant's guilty plea an admission of the quantity charged in the conspiracy count — is consistent with this rule, and with the principles announced in our decisions applying *Apprendi* to drug prosecutions. A defendant may, as Allen purports to have done, challenge his individual responsibility, for sentencing purposes, for a quantity of drugs alleged in an indictment to be attributable to a conspiracy as a whole, while entering a valid plea of guilty to the indictment. *See Gilliam*, 987 F.2d at 1013-14 (noting that a defendant's guilty plea to a "generally worded indictment [that] did not identify or ascribe any specific amount attributable to [the defendant] as opposed to the conspiracy as a whole" did not establish any particular quantity attributable to him for sentencing purposes, but raising no question of the validity of the plea itself). As the First Circuit concluded in the context of a jury trial, *Apprendi* requires only that the jury find "the bare facts necessary to increase the statutory sentencing maximum *for the conspiracy as a whole*," i.e., the quantity of drugs attributable to the conspiracy as a whole. *Derman*, 298 F.3d at 43. Likewise, in accepting a plea of guilty to an indictment alleging a quantity of drugs attributable to a conspiracy as a whole, but not specifying the quantity attributable to individual members of the conspiracy, the district court is obliged only to ensure that the defendant admits the quantity attributable to the conspiracy as a whole.[2] *Cf. United States v. Scheetz*, 293 F.3d 175 (4th Cir. 2002) (holding that a defendant's guilty plea to a conspiracy indictment alleging, inter alia, "conspiracy to distribute and to possess with the intent to distribute in excess of 1,000 kilograms of marijuana" was sufficient to elevate the applicable statutory maximum sentence to life imprisonment, the sentence provided in § 841 for that quantity).[3] We thus reject the

---

[2]This is not to suggest that a defendant may not admit, at a plea hearing or in a plea agreement, a quantity of drugs specifically attributable to him for sentencing purposes.

[3]The Second Circuit, addressing the case of a defendant who entered a plea of guilty to a conspiracy charge but did not allocute to quantity, held that the case must be remanded for either "an allocution that settles the issue of drug quantity or . . . a finding as to that issue by a fact-finder applying a reasonable doubt standard." *United States v. Yu*, 285 F.3d

Government's contention that Allen's description of the plea colloquy is inconsistent with his having entered a valid guilty plea to Count I of the indictment.

Turning now to Allen's challenge to his sentence, we conclude that even if Allen's description of his reservation at the plea colloquy is correct, the district court did not err in its determination of the quantity attributable to Allen for sentencing purposes. At the plea colloquy, the district court asked Allen, "Do you understand that, Mr. Allen? You are disputing the amount of drugs that are involved, do you think?" (J.A. at 90.) Allen responded, "Yes, sir, Your Honor," to which the district court replied, "All right. And that's something we'll work out at the time of sentencing . . . ." (J.A. at 90.) As noted above, we review a district court's drug quantity determination for purposes of sentencing for clear error. *United States v. Randall*, 171 F.3d 195, 210 (4th Cir. 1999). Thus, even if we accept Allen's contention that he refused to admit personal responsibility for 50 grams of cocaine base in his plea colloquy, we would have to find that the district court clearly erred in attributing more than 50 grams of cocaine base to him for sentencing purposes. This we cannot do.

In addition to resting its quantity determination on Allen's concession at his plea colloquy, the district court stated that "there is nothing that I have heard that would cause me to indicate that Ms. Gentry's testimony was incredible or unbelievable or false or perjured and it supports" Allen's plea. (J.A. at 147.) Gentry's grand jury testimony was the primary basis for the PSR's attribution to Allen of more than 50 grams of cocaine base. Allen asserts that the district court "did not make a finding that Gentry's testimony was accurate or that her testimony independently proved" that Allen's involvement in the conspir-

---

192, 198 (2d Cir. 2002). *Yu* is not inconsistent with the rule in *Derman* and *Turner*, however, because the defendant in *Yu* refused to allocute to *any* quantity, either as to himself individually or as to the conspiracy as a whole. Accordingly, the defendant's guilty plea in *Yu* was entered without the understanding that the Government would have to prove the quantity of drugs for which *the conspiracy as a whole* was responsible to the jury beyond a reasonable doubt, a situation which the Second Circuit held required it to remand.

acy was more than 50 grams. (Appellant's Br. at 19-20.) Such a finding, however, is implicit in the district court's reliance on Gentry's testimony in determining the quantity of cocaine base attributable to him.

The district court also relied on Agent Manchas's testimony at the plea colloquy, which the court found credible. Agent Manchas described the statements of several witnesses who saw Allen dealing cocaine base over a period of months in West Virginia. Allen asserts that the district court erred in relying on testimony by Manchas and Gentry because neither testified at the sentencing hearing. We have noted, however that a sentencing court may consider any relevant information, including hearsay evidence, provided that the information has "sufficient indicia of reliability to support its probable accuracy." *United States v. Uwaeme*, 975 F.2d 1016, 1021 (4th Cir. 1992) (quoting U.S. Sentencing Guidelines Manual § 6A1.3(a)).

Based on the district court's conclusion that Gentry's and Manchas's testimony was credible and supported the quantity determination, we cannot conclude that it clearly erred in relying on that testimony in attributing more than 50 grams of cocaine base to Allen for sentencing purposes.

III.

For the reasons stated above, the judgment of the district court is

*AFFIRMED.*